ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL IV**[1]

| | | |
|---|---|---|
| **YAYMIRDALÍ VIÑAS CASTRO** <br> RECURRENTE(S) <br><br><br> **CHRISTIAN DÁVILA CENTENO** <br> RECURRIDA(S) <br><br> **PETICIONARIOS** <br><br> **EX PARTE** | **KLCE202500553** | ***CERTIORARI*** procedente del Tribunal de Primera Instancia, Sala Superior de **CAGUAS** <br><br> Caso Núm. **GR2023RF00097 (503)** <br><br> Sobre: <br> Divorcio <br> (Mutuo Consentimiento) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y el Juez Sánchez Báez.

*Barresi Ramos*, juez ponente

# S E N T E N C I A

En San Juan, Puerto Rico, hoy día 26 de agosto de 2025.

Comparece ante este Tribunal de Apelaciones, la señora **YAYMIRDALÍ VIÑAS CASTRO** (señora **VIÑAS CASTRO**) mediante *Certiorari Civil* instado el 22 de mayo de 2025. En su recurso, nos solicita que revisemos la *Orden* dictada el 23 de marzo de 2025 por el Tribunal de Primera Instancia (TPI), Sala Superior de Caguas.[2] Mediante la mencionada decisión, el foro de instancia declaró no ha lugar la *Moción en Solicitud de Hogar Seguro* presentada el 22 de agosto de 2025 por la señora **VIÑAS CASTRO**.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

## - I -

El 17 de octubre de 2023, los señores **VIÑAS CASTRO** y **CHRISTIAN DÁVILA CENTENO** (señor **DÁVILA CENTENO**), ambos por derecho propio, entablaron

---

[1] Véase *Orden Administrativa DJ 2024-062C* de 6 de mayo de 2025 sobre designación de paneles en el Tribunal de Apelaciones.
[2] Dicho dictamen judicial fue notificado y archivado en autos el 3 de abril de 2025. Apéndice del *Certiorari Civil*, pág. 1.

una *Petición de Divorcio por Consentimiento (Con Hijos(as) y con Bienes)* (*Petición*).[3] El 30 de noviembre de 2023, se celebró la audiencia sobre divorcio.[4] Ese mismo día, el tribunal primario prescribió *Sentencia* en la cual, entre otras cosas, decretó roto y disuelto el vínculo matrimonial existente entre las partes; y acogiendo los acuerdos o estipulaciones contenidos en la *Petición* sobre patria potestad; custodia; pensión alimentaria; relaciones paterno filiales; y la liquidación de la sociedad legal de gananciales.[5] En lo pertinente al asunto ante nuestra consideración, decidió lo siguiente:

> Bienes:
> Propiedad ubicada en la Urbanización Los Robles F14 Calle 4, Gurabo, Puerto Rico 00778, con un valor de $130,000, se adjudica a la peticionaria. El copeticionario cede su participación sobre dicho bien. **La peticionaria realizará los trámites para poner la propiedad a su nombre. Los peticionarios acuerdan que de la institución bancaria no aprobar el refinanciamiento venderán la propiedad** y de haber algún sobrante será dividido en parte iguales a razón de un 50% cada parte. **Estas gestiones serán realizadas dentro del término de un (1) año**. (Énfasis nuestro).

Tiempo después, el 22 de agosto de 2024, la señora **Viñas Castro** presentó *Moción en Solicitud de Hogar Seguro* en la cual alegó, entre otras, haber realizado múltiples gestiones con la institución bancaria para tramitar algún tipo de refinanciamiento o cambiar a su nombre la propiedad inmueble, pero estas resultaron infructuosas.[6] El 27 de septiembre de 2024, el señor **Dávila Centeno** presentó *Moción Informativa y en Cumplimiento de Orden* oponiéndose a la petición de la señora **Viñas Castro**. Adujo que había cedido su participación en los bienes muebles dentro del hogar, así como la residencia con la finalidad de que vivieran en la misma, pero se había convenido que se le removiera del préstamo hipotecario dentro del plazo de un (1) año. Requirió que hasta tanto la señora **Viñas Castro** no acreditara evidencia fehaciente de sus esfuerzos razonables con distintas instituciones

---

[3] Apéndice del *Certiorari Civil*, págs. 8- 15.
[4] *Íd.*, págs. 16- 18.
[5] *Íd.*, págs. 19- 23.
[6] *Íd.*, págs. 24- 27.

bancarias para adquirir la propiedad a su nombre se declarara no ha lugar su petitorio.[7]

En consecuencia, el 30 de septiembre de 2024, se emitió *Orden* concediéndole un plazo de diez (10) días a la señora **VIÑAS CASTRO** para "demostrar y presentar prueba de los esfuerzos realizados dirigidos al cumplimiento de la Sentencia, particularmente en cuanto a adquirir la propiedad que le fue cedida y de la cual solicita el Hogar Seguro".[8] Entonces, el 15 de octubre de 2024, la señora **VIÑAS CASTRO** presentó *Moción en Cumplimiento de Orden* acreditando una misiva suscrita el 23 de febrero de 2024 por Oriental Bank precisando que "no ofrece la opción para Cambio de Dueño" y haber cumplimentado una PreSolicitud ante McCormack Baron Management (Villas at Emerald Vistas) fechada 23 de mayo de 2023.[9] El 29 de octubre de 2024, se dictaminó *Orden* requiriéndole al señor **DÁVILA CENTENO** exponer su posición sobre la *Moción en Cumplimiento de Orden* presentada por la señora **VIÑAS CASTRO** y se le impuso a la señora **VIÑAS CASTRO** aclarar quien realizaba los pagos mensuales de la hipoteca que grava la propiedad en cuestión.[10]

El 12 de noviembre de 2024, la señora **VIÑAS CASTRO** presentó *Moción en Cumplimiento de Orden sobre Pagos Hipotecarios.*[11] Expuso que desde la *Sentencia* es quien está realizado los pagos mensuales de la hipoteca. A los pocos días, el 18 de noviembre de 2024, el señor **DÁVILA CENTENO** presentó *Moción Informativa y en Cumplimiento de Orden.*[12] Sustentó que la gestión realizada con el banco hipotecario (Oriental Bank) no constituía "esfuerzos razonables" y aún tenía disponible la opción de refinanciamiento.

Por ende, el 16 de diciembre de 2024, se expidió *Orden sobre Sentencia* compeliendo a la señora **VIÑAS CASTRO** "informar y presentar evidencia de

---

[7] Apéndice del *Certiorari Civil*, págs. 28- 30.
[8] *Íd.*, pág. 31.
[9] *Íd.*, págs. 32- 35.
[10] Apéndice del *Certiorari Civil*, pág. 40.
[11] *Íd.*, págs. 41- 42.
[12] *Íd.*, págs. 43- 46

todas las gestiones realizadas con la institución bancaria para dar cumplimiento a la *Sentencia* emitida el 30 de noviembre de 2023".[13] El 2 de enero de 2025, la señora **VIÑAS CASTRO** presentó *Moción en Cumplimiento de Orden sobre Gestiones Realizadas Proceso de Refinanciamiento*.[14] Enunció que había hecho una presolicitud en el Oriental Bank para llevar a cabo un refinanciamiento pero no contaba con la cuantía necesaria para los gastos de cierre.

El 16 de enero de 2025, el tribunal recurrido dispuso una *Orden* en la cual le impuso al señor **DÁVILA CENTENO** exponer su posición "en cuanto a la solicitud de la peticionaria la cual es y cito: "que la propiedad se designe como Hogar Seguro de los menores junto a su madre hasta tanto esta pueda reunir el dinero para llevar a cabo el proceso de refinanciamiento o pueda adquirir alguna otra propiedad" dentro del término de veinte (20) días; y a la señora **VIÑAS CASTRO** aclarar si el refinanciamiento había sido aprobado por la institución bancaria en diez (10) días.[15] El 10 de febrero de 2025, la señora **VIÑAS CASTRO** presentó un escrito intitulado *Moción en Cumplimiento de Orden* manifestando que el banco llevó a cabo una precualificación para no afectar su crédito y le informó que debía aportar la cantidad de $14,797.12 como gastos de cierre para proseguir con el refinanciamiento.[16]

Posteriormente, el 6 de marzo de 2025, el señor **DÁVILA CENTENO** presentó *Moción Informativa y en Cumplimiento de Orden* objetando la reclamación para que se designe la residencia como *hogar seguro* ello fundamentado en que las estipulaciones del divorcio advinieron finales, firmes e inapelables.[17] Como resultado, el 23 de marzo de 2025, se intimó la *Orden* invocada.

---

[13] Apéndice del *Certiorari Civil*, pág. 47.
[14] *Íd.*, págs. 48- 50. Unido al escrito hay una *Cotización* de 20 de diciembre de 2024.
[15] *Íd.*, pág. 51.
[16] Apéndice del *Certiorari Civil*, págs. 52- 53.
[17] págs. 54- 55.

Inconforme, el 21 de abril de 2025, la señora **VIÑAS CASTRO** presentó *Moción de Reconsideración de Orden.*[18] Reseño que no había podido conseguir refinanciamiento ni cambiar a su nombre la deuda hipotecaria así como el señor **DÁVILA CENTENO** "no ha demostrado que su interés propietario es superior a la seguridad que dicha residencia cumple con los menores la cual ha sido su entorno protector[...]".El 21 de abril de 2025, notificada el 22 de abril de 2025, se decidió *Resolución Interlocutoria* declarando no ha lugar a la *Moción de Reconsideración de Orden.*[19]

En desacuerdo, el 22 de mayo de 2025, la señora **VIÑAS CASTRO** acudió ante este foro intermedio revisor señalando el(los) siguiente(s) error(es):

> Erró el TPI al no designar como hogar seguro la actual residencia de los menores junto a su madre, residencia sobre la cual las partes estipularon mediante Sentencia vender en el término de un año si la se[ñ]ora madre no conseguía refinanciar la misma o pusiera a su nombre, esto a pesar de las múltiples diligencias hechas por la madre, de reunir los criterios señalados por nuestro estado de derecho para designar residencias como hogar seguro y sobre todo no tener un lugar accesible que cuente con todas las necesidades básicas para sus hijos.

El 28 de mayo de 2025, pronunciamos *Resolución* concediendo, entre otras cosas, un término perentorio de diez (10) días para mostrar causa por la cual no debíamos expedir el auto de *certiorari* al señor **DÁVILA CENTENO**. En cumplimiento, el 12 de junio de 2025, el señor **DÁVILA CENTENO** presentó su *Alegato de la Parte Recurrida*. Acotó que, conforme a la *Sentencia* sobre divorcio, los señores **VIÑAS CASTRO** y **DÁVILA CENTENO** convinieron que el señor **DÁVILA CENTENO** cedería su participación en la vivienda. Ello sujeto a que la señora **VIÑAS CASTRO** lograra poner la propiedad a su nombre o se aprobara el refinanciamiento; de lo contrario, se procedería con la venta del inmueble y el sobrante, si alguno, se dividiría en partes iguales (50% cada uno).

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en

---

[18] *Íd.*, págs. 2- 6.
[19] Apéndice del *Certiorari Civil*, pág. 7.

posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

## - II -

### - A - *CERTIORARI*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior instancia judicial.[20] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[21]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[22] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[23]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[24] La aludida Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[25] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1)     se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2)     en asuntos relacionados a privilegios evidenciarios;
> (3)     en casos de anotaciones de rebeldía;
> (4)     en casos de relaciones de familia;
> (5)     en casos revestidos de interés público; o

---

[20] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[21] *Íd.*
[22] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[23] *Íd.*
[24] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez*, *supra*.
[25] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).

(6)      en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[26]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[27]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[28] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
(D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[29]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[30] En otras palabras, los anteriores criterios

---

[26] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 59-60, 215 DPR __ (2025); *Torres González v. Zaragoza Meléndez, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).
[27] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).
[28] *Íd.*
[29] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 59- 60, 215 DPR __ (2025); *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).
[30] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).

nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[31] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*.[32] La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[33]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[34] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[35]

## - B - *Estipulaciones*

Los divorcios por la causal de mutuo consentimiento deben tramitarse mediante una petición conjunta incluyendo las estipulaciones concernientes a la patria potestad, custodia, relaciones filiales, pensión alimentaria y liquidación de la sociedad legal de gananciales o comunidad de bienes.[36] Las estipulaciones suscritas por las partes contenidas en una petición y "aceptada por el tribunal constituye un contrato de transacción judicial [...]".[37] Para que una estipulación en un proceso de divorcio se considere una transacción judicial, esta debe poner fin a un litigio o pleito mediante concesiones recíprocas entre las partes, elemento esencial de un contrato de transacción.[38] Ello, pues un "contrato de transacción es un acuerdo mediante

---

[31] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).
[32] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).
[33] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019); *Mun. Caguas v. JRO Construction Inc., supra.*
[34] *García v. Asociación*, 165 DPR 311, 322 (2005).
[35] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[36] *Díaz Rodríguez v. García Neris*, 208 DPR 706 (2022).
[37] *Díaz Rodríguez v. García Neris, supra.*
[38] *Betancourt González v. Pastrana Santiago*, 200 DPR 169, 184 (2018).

el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen fin a uno ya comenzado, con el propósito de evitar los pesares que conllevaría un litigio".[39] En palabras sencillas, mediante las estipulaciones, las partes ponen fin a una acción e incorporan unos acuerdos al proceso judicial en curso. Como regla general, el tribunal aceptará los convenios y las estipulaciones a las cuales las partes lleguen para finalizar un pleito, y este acuerdo tendrá efecto de cosa juzgada entre las partes.[40] El tribunal no está obligado a aprobar la estipulación sometida dado que debe cerciorarse de que no es producto de la irreflexión o de la coacción.[41]

### - C – *Hogar Seguro*

El Artículo 477 del Código Civil de Puerto Rico de 2020, sobre el derecho a permanecer en la vivienda familiar, instituye:

> Cualquiera de los excónyuges o cualquiera de los hijos que quedan bajo su patria potestad, puede solicitar el derecho a permanecer en la vivienda de la Sociedad de Gananciales que constituye el hogar principal del matrimonio y de la familia antes de iniciarse el proceso de divorcio. Este derecho puede reclamarse desde que se necesita, en la petición de disolución del matrimonio, durante el proceso o luego de dictarse la sentencia. En los casos donde la vivienda familiar principal sea privativa de cualquiera de los excónyuges y exista otra vivienda perteneciente a la Sociedad de Gananciales, el Tribunal podrá establecer como vivienda familiar la propiedad perteneciente a la Sociedad de Gananciales. En los casos en que no exista una vivienda perteneciente a la Sociedad de Gananciales, el tribunal determinará c[ó]mo se cumplirá con el derecho a hogar seguro.[42]

Para conceder el derecho a permanecer en la vivienda familiar, el tribunal debe considerar las siguientes circunstancias:

> (a) **los acuerdos de los cónyuges sobre el uso y el destino de la vivienda durante la vigencia del matrimonio y después de su disolución**;
> (b) si el cónyuge solicitante mantiene la custodia de los hijos menores de edad;
> (c) si el cónyuge solicitante retiene la patria potestad prorrogada o la tutela de los hijos mayores incapacitados o con impedimentos físicos que requieren asistencia especial y constante en el entorno familiar;

---

[39] *Mun. de San Juan v. Prof. Research*, 171 DPR 219, 238 (2007).
[40] *Díaz Rodríguez v. García Neris, supra*, pág. 720.
[41] *Díaz Rodríguez v. García Neris, supra*.
[42] 31 LPRA § 6851.

(d) si los hijos mayores de edad, pero menores de veinticinco (25) años, permanecen en el hogar familiar mientras estudian o se preparan para un oficio;

(e) si la vivienda familiar es el único inmueble que puede cumplir razonablemente ese propósito dentro del patrimonio conyugal, sin que se afecte significativamente el bienestar óptimo de los beneficiados al momento de su concesión con más necesidad de protección;

(f) si el cónyuge solicitante, aunque no tenga hijos o, de tenerlos, no vivan en su compañía, necesita de esa protección especial, por su edad y situación personal; y

(g) cualquier otro factor que sea pertinente para justificar el reclamo.[43]

El Artículo 479 del Código Civil de Puerto Rico de 2020, relativo a la constitución del hogar seguro, instaura: "[d]esde la concesión del derecho a permanecer en la vivienda familiar, el inmueble se convierte en el hogar seguro del solicitante y de los beneficiados al momento de su concesión que han de convivir en él. El Tribunal identificará a todos los beneficiados en la sentencia y establecerá las condiciones y el plazo en que cada cuál ha de disfrutarlo".

"La solicitud del derecho a permanecer en la vivienda familiar luego de la disolución por divorcio, debe ventilarse en el mismo expediente. Si hay objeción fundamentada del titular del inmueble o de alguna tercera persona con derecho real sobre el mismo, la solución del asunto se hará en una vista plenaria. La solicitud del derecho luego de la disolución del matrimonio por la muerte o por la muerte presunta de un cónyuge se atenderá en vista sumaria".[44]

Por otra parte, Ley Núm. 195 de 13 de septiembre de 2011, según enmendada, conocida como la *Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar* establece la política pública del Gobierno de Puerto Rico de asegurar que todo individuo o jefe de familia domiciliado en Puerto Rico, goce de una protección que cobije la posesión y el disfrute de su residencia principal **contra el riesgo de ejecución de esa propiedad (énfasis nuestro)**.

---

[43] Artículo 478 del Código Civil de Puerto Rico de 2020, 31 LPRA § 6852 (énfasis nuestro).
[44] Artículo 481 del Código Civil de Puerto Rico de 2020, 31 LPRA § 6855.

**- III -**

En su único señalamiento de error, la señora **VIÑAS CASTRO** apunta, en síntesis, que erró el foro primario al no designar como *hogar seguro* la residencia actual de los menores.[45] Ello a pesar de las múltiples diligencias efectuadas por esta para cambiar la propiedad a su nombre o refinanciarla; por estar presentes los criterios señalados por nuestro estado de derecho para otorgar *hogar seguro;* y, sobre todo, no tener un lugar accesible que cuente con todas las necesidades básicas para sus hijos.

Respecto a los criterios dispuestos en nuestro ordenamiento jurídico para que se le confiera el derecho a permanecer en la vivienda familiar, la señora **VIÑAS CASTRO** sustenta su posición en que ostenta la custodia de los hijos menores de edad (criterio b); el hogar es donde estos han vivido ininterrumpidamente por más de tres (3) años (criterio g); y la propiedad está localizada en una zona segura y céntrica, aproximadamente de veinte (20) a veinticinco (25) minutos de su escuela. Plantea además que suscribió las estipulaciones por derecho propio, lo cual redundaba en que no había sido orientada sobre el derecho a *hogar seguro* en beneficio de los menores. Reitera que el señor **DÁVILA CENTENO** "no ha demostrado que su interés propietario es superior a la seguridad que dicha residencia cumple con los menores la cual ha sido su entorno protector".

En cambio, el señor **DÁVILA CENTENO** exterioriza que el dictamen del foro primario hizo formar parte de este todos los acuerdos y estipulaciones contenidos en la *Petición,* así como en sus testimonios vertidos durante la audiencia sobre divorcio. Ello incluyendo la liquidación y adjudicación de los bienes gananciales. En ese sentido, replica que acordaron que, si no se lograba refinanciar el préstamo hipotecario a nombre de la señora **VIÑAS CASTRO**, la propiedad se vendería y de haber sobrante, se dividiría a razón de

---

[45] Es preciso apuntar que, en el presente caso, hallamos plenamente justificada nuestra intervención en la etapa en que se encuentra el presente caso. Toda vez que se recurre de una *Orden* post sentencia en un caso de relaciones de familia.

cincuenta por ciento (50%) cada uno. Esgrime que los acuerdos y estipulaciones formalizados en la *Petición*, una vez aceptados por el tribunal constituyen un acuerdo transaccional que obliga a las partes.

Durante el procedimiento del divorcio, los señores **DÁVILA CENTENO** y **VIÑAS CASTRO** convinieron unos acuerdos transaccionales al suscribir la *Petición,* acompañada con el escrito intitulado *Estipulaciones*, acogidos mediante la *Sentencia* prescrita el 30 de noviembre de 2023.[46] Como parte de la *Petición*, liquidaron todos sus bienes, incluyendo la casa, y adjudicaron las deudas gananciales. En esencia, concertaron que el señor **DÁVILA CENTENO** cedía su participación en el bien ganancial sito en la Urbanización Los Robles a cambio de que la señora **VIÑAS CASTRO** lo liberara de la deuda hipotecaria que grava el bien inmueble. A su vez, pactaron que si en un término de un (1) año, la señora **VIÑAS CASTRO** no lograba completar el proceso de refinanciamiento, se vendería la propiedad y si hubiese un remanente sería dividido en partes iguales (50% cada uno).

Si bien es cierto que el derecho de *hogar seguro* puede ser reclamado en favor de los hijos menores de edad, dicha decisión se debe efectuar caso a caso, según las circunstancias presentes en cada uno. Cónsono con lo anterior, el Código Civil de Puerto Rico de 2020 implanta que al momento de conceder el derecho a permanecer en la vivienda familiar se debe considerar, entre otros criterios, **los acuerdos de los cónyuges sobre el uso y el destino de la vivienda después de la disolución del matrimonio**.[47] Tras un análisis detenido del expediente ante nuestra consideración, colegimos que no se incidió en error alguno. Veamos.

---

[46] Apéndice del *Certiorari Civil*, págs. 16- 18. Los señores **DÁVILA CENTENO** y **VIÑAS CASTRO** informaron su deseo de continuar los procedimientos por derecho propio. Estos fueron examinados, bajo juramento, por el tribunal para constatar si su decisión era una libre y voluntaria. Acogido su petitorio, lo concertado por los señores **DÁVILA CENTENO** y **VIÑAS CASTRO** constituye un contrato cuyos términos son claros y no deja duda sobre la intención de estos. Así, inferimos que no eran perjudiciales a sus hijos y no fueron producto de la irreflexión o de coacción alguna. De la ilación, todas las transacciones sobre los bienes y deudas gananciales fueron aprobadas por el Tribunal; por consiguiente, constituyen cosa juzgada.

[47] Artículo 478 inciso (a) del Código Civil de Puerto Rico de 2020.

Debemos tener presente que en el caso de marras no existe controversia sobre el hecho de que ha transcurrido en exceso el término de un (1) año concordado por las partes para que la señora **VIÑAS CASTRO,** madre de los menores, liberara al señor **DÁVILA CENTENO** de la deuda hipotecaria. De igual manera, surge del expediente que la señora **VIÑAS CASTRO** sólo realizó gestiones con una institución bancaria: Oriental Bank a los fines del cambio de dueño; y refinanciamiento para adquirir el bien inmueble.[48] Es decir, no realizó las diligencias suficientes para cumplir con lo acordado.

Cabe destacar que el señor **DÁVILA CENTENO** manifestó en múltiples ocasiones no tener interés alguno en que la señora **VIÑAS CASTRO** tenga que vender la propiedad o los menores de edad se queden sin un techo, sino que su única solicitud es a los efectos de que se cumpla con lo pactado, lo cual surgió de los compromisos de ambas partes, y se le remueva del préstamo hipotecario para así poder adquirir su propia residencia y también brindarles un techo a sus hijos.

Adicionalmente, no podemos pasar por alto que, nuestro Tribunal Supremo ha expresado que las estipulaciones que se formalizan entre las partes mediante una petición sobre divorcio por mutuo consentimiento, una vez aceptadas por el tribunal, constituyen un acuerdo transaccional que obliga a las partes.[49] Por ello, cuando una de las partes incumple alguna de las estipulaciones concernientes a la liquidación de bienes, nuestro ordenamiento jurídico contempla el procedimiento de ejecución de sentencia como el mecanismo para que lo convenido se lleve a cabo.[50]

Concurrimos con la decisión del tribunal de instancia de denegar la solicitud de *hogar seguro* presentada por la señora **VIÑAS CASTRO**. Ante la ausencia de prejuicio, parcialidad o error manifiesto por parte del juzgador de los hechos, procedemos a confirmar la determinación recurrida. Empero,

---

[48] Apéndice del *Certiorari Civil,* págs. 36 y 50.
[49] *Igaravidez v. Ricci,* 147 DPR 1 (1998).
[50] *Íd,* pág. 7.

ello no impide que las partes puedan convenir un plazo razonable para que la señora **Viñas Castro** realice otras gestiones con distintas entidades bancarias, financieras o cooperativas.

- IV -

Por los fundamentos antes expuestos, *expedimos* el auto de *Certiorari* instado el 22 de mayo de 2025 por la señora **Viñas Castro**; y, en consecuencia, *confirmamos* la *Orden* dictaminada el 23 de marzo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Caguas.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón disiente con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones